
FILED

JUN 0 8 2017

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GREGORY DAVID KALAYJIAN,<br><br>Defendant. | CR 17–13–M–DLC<br><br><br>ORDER |

Before the Court is Defendant's Motion to Suppress (Doc. 34). For the reasons given below, the Court denies Defendant's motion.

### FACTUAL BACKGROUND[1]

On Halloween night, 2016, as Missoula Police Officer Brandon O'Dell drove his police cruiser behind the Brooks Street Motor Inn, he saw a man and a woman leave room 607 and walk toward two cars—a white Subaru Impreza and a blue Nissan Altima—parked directly in front of the motel room. Noticing that the pair "seemed kind of startled to [his] arrival in a police car," O'Dell turned into the motel parking lot. (Doc 37-1 at 7.) The white Subaru was heading out of the

---

[1] A preliminary hearing before Magistrate Judge Jeremiah C. Lynch was held on March 27, 2014. The facts derive from the testimony of Officers O'Dell and Stonesifer at that hearing and the exhibits filed by the parties.

1

parking lot and toward the police car as O'Dell pulled in, but as O'Dell approached, the Subaru backed up into the parking spot it had just left, directly in front of room 607. O'Dell assumed that the occupants of the vehicle were the same man and woman that he had seen outside the room.[2]

O'Dell recognized the other car parked outside room 607, the blue Altima, as belonging to Matthew Jones, for whom a warrant was outstanding. After confirming Jones's rental of the motel room, O'Dell called for backup. While O'Dell was waiting, Jones poked his head out of the room, and O'Dell ordered him to the ground, where he remained until the other officers arrived.

O'Dell could see inside the room through the open door. Defendant Gregory Kalayjian sat on the motel room bed. A woman, Amy Johnson, exited the bathroom and sat down next to Kalayjian. When O'Dell's backup came onto the scene, the officers arrested Jones and asked Kalayjian to step outside the room. During their search of Johnson incident to arrest, officers located suspected methamphetamine, suspected heroin, and several thousand dollars.

---

[2] Kalayjian suggests that O'Dell could not have know that the pair intended to enter the Subaru and could have been heading toward the blue Altima instead. However, O'Dell testified that he inferred that the individuals he saw outside the room were in the Subaru because he saw the Subaru moving suspiciously in the parking lot immediately after seeing the two individuals walking from room 607 toward the two cars. As with his other factual arguments, Kalayjian is not pressing a different version of the facts but only a different (and unlikely) spin on the same facts. Here, O'Dell's inference is eminently reasonable.

O'Dell entered the room, and he noticed drug paraphernalia in plain sight. O'Dell spoke with Johnson. She informed him that Kalayjian had picked her and Jones up from a gas station earlier that evening in the white Subaru.[3] Kalayjian then drove them to the motel, and the trio planned to celebrate Kalayjian's birthday at a strip club later that night. Johnson told O'Dell that she and Jones intended to walk to the club and that Kalayjian would drive his car, the white Subaru.

The officers searched the hotel room, in which they found a large chunk of heroin, a small pebble of heroin, and marijuana. Johnson identified a black backpack as hers, and she gave consent to its search. O'Dell found paraphernalia and drugs in the bag. Kalayjian stated that nothing in the room belonged to him.

---

[3] In his reply brief, Kalayjian argues that Johnson's recitation of the events leading up to the motel room search was "obviously implausible" because the Subaru is a "small four door vehicle," and its backseat was cluttered. (Doc. 41 at 2, 5.) He states that "[t]o believe Johnson, one would have to accept that two people, [collectively] weighing 316 pounds could have fit in the front passenger seat of a small vehicle." (Doc. 41 at 2.) He cites to Detective Stonecipher's testimony that it would take "some difficulty" for *two* passengers to ride in the back of the Impreza. (Doc. 27-2 at 19.) Kalayjian further asserts that Johnson very obviously invented the story to detract the police from evidence that might be found in Jones's Altima in order to protect herself and Jones.

Having viewed the photograph of the Subaru at the time of the arrest, (Doc. 14-25), the Court disagrees that a single passenger could not have ridden in the back seat of the four-door sedan while another rode in the front seat—the logical arrangement for two adult passengers. Only one easily movable item, the metal lock box discussed below, appears to prevent a passenger from sitting on the passenger-side backseat. Moreover, the Court finds that Kalayjian's argument on this point is grounded in exaggeration of the size and condition of the car and speculation regarding Johnson's motives for telling what a reasonable officer would understand to be a plausible, even mundane, history of events.

Outside the room, O'Dell asked Kalayjian for consent to search the Subaru, which Kalayjian denied.[4] O'Dell looked through the vehicle's windows and saw a box of Remington ammunition, a bottle of liquor, a locked silvertone metal briefcase, and a small zippered red and black bag. O'Dell, who has seen a "fairly high volume" of drug-related calls as a patrol officer in his four and a half years on the force, knew that containers like the metal lock box and zippered pouch are commonly used to transport and conceal drugs and paraphernalia. (Doc. 37-1 at 5–6, 25–26.) Believing that the Subaru likely contained evidence of drug-related activity, O'Dell seized the vehicle to preserve the evidence. At that time, O'Dell and his fellow officers were unaware that Kalayjian was a felon and prohibited from possessing ammunition.

Other members of the Missoula Police Department, including Detective Matthew Stonesifer, applied for and received a warrant to search the Subaru. After the vehicle was seized but before the application was completed, the officers learned that Kalayjian was a convicted felon. The search of the Subaru proved fruitful. Inside the trunk was a safe containing nearly $12,000 in cash, suspected

---

[4] Kalayjian seems to suggest that O'Dell could not have known that the Subaru was his own. O'Dell knew that the Subaru belonged to Kalayjian because of his earlier conversation with Johnson and because Kalayjian's name showed up when O'Dell searched the Subaru's temporary tag number.

liquid methadone, suspected marijuana, and substances that NIK-tested presumptive positive for heroin and methamphetamine. Two handguns were found—one under the front passenger seat and the other under the driver's seat. The silver case contained additional ammunition. Following the search, a warrant issued for Kalayjian's arrest.

As part of a separate drug investigation, law enforcement officers learned that Kalayjian was present in a mobile home at 915 Ronan Street, unit number 1, Missoula, Montana, where significant suspected drug activity was occurring. A search warrant issued to search the Ronan Street property on December 16, 2016. The warrant application referred to the outstanding warrant for Kalayjian's arrest. It also referenced a great deal of additional information learned during the course of the investigation of the Ronan Street property. Confidential sources and tipsters had given law enforcement information about another occupant of the Ronan Street property suggesting that this occupant was involved in the drug trade. The property was under surveillance in early December 2016, and officers observed traffic to and from the property consistent with drug distribution. On December 16, 2016 but before the search warrant was applied for and issued, officers witnessed an apparent hand-to-hand drug transaction involving the other occupant of the Ronan Street property just outside the residence. (Doc. 37-3.)

5

When they executed the warrant, members of the United States Marshal Service and local police officers found Kalayjian at the Ronan Street property. Kalayjian was arrested on his state arrest warrant. Another individual on the property at the time informed local police that she had seen Kalayjian in possession of firearms just before the search warrant was executed. During the course of the search, the officers found two guns and a number of drug-related items. (Docs. 35-1 at 13–16, 37-3.)

Kalayjian now faces multiple felony drug- and gun-related charges stemming largely from the physical evidence found in the white Subaru and the Ronan Street mobile home.

## DISCUSSION

Kalayjian argues that the evidence supporting the government's charges—the four guns—should be suppressed because: (1) O'Dell lacked probable cause to seize the white Subaru Impreza; and (2) the evidence found during the searches of the vehicle and the Ronan Street property is fruit of the poisonous tree. The government contends that: (1) probable cause justified seizing and searching the Subaru; (2) the exclusionary rule is inapplicable because its application would not promote deterrence; and (3) even if the evidence located during the search of Kalayjian's car should be suppressed, that which was found during the search of

the Ronan Street property should not suffer the same fate. Because the Court determines that law enforcement had probable cause to seize and search Kalayjian's vehicle, it does not reach the other issues raised by the parties.

I. **Probable Cause**

Generally, the Fourth Amendment prohibits warrantless searches and seizures. However, under the automobile exception, no warrant is necessary when officers have probable cause to search a vehicle. *United States v. Ibarra*, 345 F.3d 711, 715 (9th Cir. 2003). In the Ninth Circuit, probable cause is also required to seize an automobile. *United States v. Bagley*, 772 F.2d 482, 491 (1985).[5]

---

[5] Kalayjian relies heavily on *Bagley*, in which the Ninth Circuit Court of Appeals stated that "the existence of probable cause alone justifies a warrantless search or seizure of a vehicle lawfully parked in a public place." *Bagley*, 772 F.2d at 491. However, Kalayjian ignores a later passage in *Bagley*, which wholly undermines his argument: "[E]ven if we were to find the seizure of the automobile unlawful, suppression of the items seized from the car would be inappropriate. The items were secured during a search conducted pursuant to a warrant. Towing the automobile to the police storage lot for safekeeping in no way contributed to the subsequent search. The search warrant was based on information wholly independent of the automobile seizure. The exclusionary rule is therefore inapplicable to the items secured from the automobile." *Id*; *see also United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986) ("[P]robable cause to search the jeep existed independent of the information obtained as a result of the [allegedly unlawful] seizure."); *United States v. Dodson*, 2 F.3d 1158 (table), 1993 WL 306158 (9th Cir. 1993) ("[E]ven if the police did not have probable cause to seize Dodson's automobile, the search of the automobile was proper" when the search was made pursuant to a warrant based on information discovered independent from the seizure.). This appears to make perfect sense; exclusion of the evidence could not fix the constitutional harm when the constitutional harm did not give rise to the discovery of the evidence.

The government does not address the inconsistency of Kalayjian's reliance on *Bagley*, and it does not argue that the alleged unlawfulness of the seizure is irrelevant to the reasonableness of the subsequent search. Thus, the Court does not develop the issue further.

7

Here, Kalayjian does not argue that the search, conducted after law enforcement officers learned of his status as a felon, was supported not only by probable cause but by a valid warrant. Rather, the dispute is whether probable cause existed to seize the white Subaru.

"Probable cause to search exists when the known facts and circumstances are sufficient to warrant a reasonable person to conclude that contraband or evidence of a crime will be found." *Id.* at 716. A "fluid concept," there is no mechanical formula for probable cause, but "[t]he principal components of a determination of . . . probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

Probable cause existed to seize Kalayjian's vehicle. A reasonable officer, viewing the facts known to O'Dell at the time of the seizure, would conclude that contraband or evidence of the crimes of possession and distribution would be found in the car. The white Subaru was clearly connected to room 607, in which drugs were found in separate quantities consistent with both personal use and distribution. Johnson and Jones had traveled in the Subaru earlier that evening, and both likely transported drugs on their persons from the gas station to the motel

8

room during that ride in Kalayjian's car. Two individuals—presumably Johnson and Kalayjian—behaved suspiciously outside the room and then got into the Subaru, which was in turn operated in a suspicious manner. A metal lock box, of a type frequently employed in the transportation and sale of drugs, was visible in the car. The simple fact that additional information—Kalayjian's status as a felon—was included in the warrant application does not demonstrate that probable cause was lacking before that information was known, as Kalayjian ostensibly suggests. Based on the facts known at the time of the seizure, it was wholly reasonable for O'Dell to conclude that the car likely contained drugs, paraphernalia, and/or other evidence of the crimes of drug distribution and possession.

Neither the seizure nor the search of Kalayjian's vehicle presents a Fourth Amendment violation. Moreover, there was probable cause for the later search of the Ronan Street property, independent of the search of Kalayjian's vehicle and the subsequent issuance of an arrest warrant for Kalayjian. Indeed, Kalayjian was not even the primary target of the Ronan Street search. Although the search warrant application mentions that an arrest warrant for Kalayjian was issued after the Halloween night search and that Kalayjian was "currently inside" the Ronan Street property, the application would have been supported by probable cause if it

9

had been silent as to Kalayjian.

Because Kalayjian has not shown that his Fourth Amendment rights were violated, the Court does not address the other issues briefed by the parties. The evidence is admissible.

ACCORDINGLY, Defendant's Motion to Suppress (Doc. 34) is DENIED.

DATED this 8th day of June, 2017.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court